UNITED STATES of America, Plaintiff-Appellee,

v.

Alton R. FAIRCHILD, Defendant-Appellant.

No. 74-2097.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1975.

**1380**

Phil Burleson, Michael P. Gibson, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., Harold S. Jaquet, Asst. U. S. Atty., Ft. Worth, Tex., Charles D. Cabaniss, Wm. F. Sanderson, Jr., Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before GEWIN, AINSWORTH and GEE, Circuit Judges.

GEE, Circuit Judge:

Alton Robert Fairchild was convicted of twice violating the Dyer Act, 18 U.S.C. § 2313.[1] He now complains (1) that the evidence presented was insufficient to support a jury finding that he knew that the cars which he had received were stolen, (2) that the trial court committed error when it allowed the jury to hear testimony that he stood silent after he had been read his *Miranda*[2] warnings and (3) that plain error was committed when the United States Attorney, in his summation, made a comment which implied that Fairchild's failure to make a statement after his arrest showed that

he had knowledge that the cars were hot.

In September of 1972, FBI Agent Israelson received information from a confidential informant that a Mr. Alton Robert Fairchild was in possession of a stolen 1972 Cadillac Eldorado. The informant also gave Israelson a Dallas telephone number at which Fairchild could be reached. Using the criss-cross index Israelson discovered the address of the telephone and proceeded there. When a young lady emerged he followed her to a Dallas motel. There he saw, parked next to a Ford LTD, a Cadillac fitting the description provided by his informant. He called in the license and vehicle identification numbers of the Cadillac and confirmed that it was, indeed, a stolen vehicle. A check also revealed that the Ford was registered to a Mr. Alton Robert Fairchild. At this point Agent Israelson contacted Detective Hobbs of the Dallas Police Department and brought him in on the case. Israelson and Hobbs put the Cadillac under surveillance. Eventually four people emerged from the motel, entered the Cadillac and drove to an apartment complex outside the Dallas city limits. The four were later identified as Mr. Fairchild, Dr. John Heisler and two women friends of theirs. At the apartment complex Mr. Fairchild and his companions were observed looking into a 1971 Buick Electra.[3] A check revealed that this Buick, like the Cadillac, was a stolen vehicle. After looking at the Buick the four returned to the Cadillac and drove towards Dallas. As soon as they entered the city limits they were stopped by Detective Hobbs. Dr. Heisler, who

---

1. Initially, a four-count indictment was brought against Mr. Fairchild. Count 1 charged him with interstate transportation of a stolen vehicle, a Cadillac Eldorado, in violation of 18 U.S.C. § 2312. Count 2 charged him with receiving and concealing the same vehicle in violation of 18 U.S.C. § 2313. Counts 3 and 4 accused him of receiving and concealing two stolen Buick Electras. At the close of evidence verdicts of acquittal were directed on counts 1 and 4.

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. In a later check of the apartment complex parking lot Israelson found a second stolen Buick. This vehicle was the basis for count 4 of the indictment against Fairchild, one of the counts on which a verdict of acquittal was directed.

was driving the Cadillac, explained that he was buying the car through Mr. Fairchild from a man named Ferguson. He denied that either he or Fairchild had knowledge that the car was stolen. Fairchild told essentially the same story —that he had purchased the car from Ferguson and was selling it to Heisler —and produced papers which purported to show that he was in legitimate possession of the Eldorado. Unfortunately for him, some of the papers matched the Cadillac, some matched a Buick and none convinced Hobbs of his bona fides. The occupants of the Cadillac were placed under arrest and taken to a Dallas police station. There Mr. Fairchild was read his *Miranda* rights.

Knowledge that a vehicle received or concealed was stolen is a necessary element of the crime defined by 18 U.S.C. § 2313. E.g., United States v. Bryant, 490 F.2d 1372 (5th Cir. 1974). The burden of proving such knowledge is, of course, on the government. The prosecution is aided, however, by the well-established and judicially approved common law presumption that "an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." Barnes v. United States, 412 U.S. 837, 843, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380 (1973).[4] Fairchild seems to argue that his evidence that he legitimately obtained the vehicles from a man named Ferguson—a phantom whom neither the defense nor the prosecution was able to produce at trial—and his evidence that he had checked with a car dealer friend and determined that both the Cadillac and Buick were clean have somehow dissipated the common law presumption. However, the law of this cir-

cuit is that a defendant's explanation of his possession of recently stolen goods does not necessarily overcome this permissible inference of guilty knowledge. This is so because the jurors are entitled to judge the credibility of the defendant's explanation and assign to the evidence whatever weight they feel it deserves. United States v. Smith, 502 F. 2d 1250 (5th Cir. 1974). Fairchild's claim that there was insufficient evidence of guilty knowledge might possibly be rejected on the basis of the presumption alone. There was, however, additional, circumstantial evidence which tended to prove that he knew of the stolen nature of the vehicles.

By his own testimony, Fairchild admitted that he had dealt with Ferguson on two separate occasions.[5] Both times the cars which came into Fairchild's possession proved to have been stolen. Twice Fairchild agreed to transfer Cadillac Eldorados to Dr. Heisler at prices well below their market value. At all times the papers on the cars which Fairchild came to possess were, to put it mildly, in a state of disarray. Not one official document indicated that any of the cars ever belonged to a Mr. Ferguson.[6] Furthermore, in helping Dr. Heisler arrange for financing of the first Cadillac, Fairchild, in the presence of a notary, signed the name "Russell Sullivan" to an affidavit. This was the name under which that car had been registered in Alabama prior to Heisler's registering it in Texas.

Since Fairchild has been found guilty, we must, in examining its sufficiency, view the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62

---

4. Usually the presumption is phrased as applicable to recently stolen goods.

5. Prior to the incident under discussion Fairchild, according to his own testimony, had assisted Dr. Heisler in purchasing a Cadillac from Ferguson. We shall refer to this automobile as the first Cadillac. *Mirabile dictu*, it turned out to be a stolen vehicle.

6. Both Fairchild and Heisler testified that the first Cadillac was a car which belonged to Mr. Ferguson but which he wished to unload quickly and for cash because he was getting a divorce. The other cars were supposedly obtained by Ferguson from a bankruptcy proceeding in Alabama.

**1382**

S.Ct. 457, 86 L.Ed. 680 (1942). This light shines on circumstantial as well as direct evidence. In order for circumstantial evidence to support a conviction, the inferences to be drawn from it must be consistent with the guilt of the defendant. Also, the evidence must be such that a jury could conclude that it is inconsistent with every reasonable hypothesis of innocence. United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971). The circumstantial evidence presented against Fairchild was, under these standards, sufficient. Fortified by the presumption, it was more than sufficient.

During the trial, the prosecutor, over defense objection, was allowed to elicit from a government witness, Detective Hobbs, the fact that Fairchild had refused to make a statement after he had been read his *Miranda* rights. The admission of this testimony was, according to Fairchild, error. The government now seeks to sustain the admission of Hobbs' revelation on two grounds. First, it argues that Fairchild's silence was admissible for impeachment purposes. Second, it points out that it was Fairchild himself who opened the door for Hobbs' testimony.

■ ■ We have serious doubts that Fairchild's silence following his arrest and following the receipt of his *Miranda* warnings was admissible for impeachment purposes. It is true that when Fairchild became a witness he subjected himself to impeachment for, as is the case with any other witness, the credibility of a defendant who takes the witness stand and of his testimony is open to legitimate attack. The attack on the defendant-witness and his testimony may, of course, take the form of impeachment by prior inconsistent act.

We have held that, in extreme cases, silence following *Miranda* warnings can be the type of act which is inconsistent with certain exculpatory trial testimony. In such cases evidence of the silence is admissible. United States v. Ramirez, 441 F.2d 950 (5th Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971), United States v. Quintana-Gomez, 488 F.2d 1246 (5th Cir. 1974).[7] But, to be admissible, keeping silence must be much more than ambiguous. It must appear to be an act blatantly inconsistent with the defendant's trial testimony. This will be the case when, as in *Ramirez* and *Quintana-Gomez*, the exculpatory testimony is of such a character that reasonable men would be left with the distinct impression that had it been true it would have been related to law enforcement authorities *even though* the defendant was specifically informed that he need not speak. Fairchild's trial testimony, basically that he received the cars from the phantom Ferguson in what he believed to be a legitimate transaction, does not leave this impression. This is especially true since Fairchild had tried to persuade Detective Hobbs and FBI Agent Israelson, the officers who first confronted him, that he had purchased the car in which he was riding from Ferguson. Obviously, the officers had not believed his story, for they placed him under arrest and took him downtown. At this point, Fairchild must have known that he was in trouble and must have realized that repeating the Ferguson story, the same story that he was later to relate in expanded form from the witness stand, would do him little good. After Fairchild had been informed that he had the right not to speak until his lawyer was present he did what a reasonable man could be expected to do—he remained silent.

---

7. Other circuits have disagreed with us. United States v. Anderson, 498 F.2d 1038 (D.C.C.1974). Johnson v. Patterson, 475 F.2d 1066 (10th Cir.), cert. denied, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973). We have, however, enlisted some support.

United States ex rel. Burt v. New Jersey, 475 F.2d 234 (3rd Cir.) cert. denied, 414 U. S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973), Agnellino v. New Jersey, 493 F.2d 714 (3rd Cir. 1974).

■ *Miranda* establishes that the prosecution may not use as a part of its case in chief a criminal defendant's silence following his arrest and warning. This evidence, even though it might be relevant and probative, is normally excluded. But it is important to note that it is excluded for the purpose of protecting certain rights of the defendant. It is not excluded so that the defendant may freely and falsely create the impression that he has cooperated with the police when, in fact, he has not. After getting Agent Israelson to admit that his client had no previous criminal history and had voluntarily provided handwriting samples, Fairchild's counsel attempted to create this impression when he asked, "During the period of time that this investigation has been going on, to your knowledge has Mr. Fairchild cooperated fully with the FBI and U. S. Attorney's office in responding with anything that you all wanted?" Having thus raised the question of his cooperation with the law enforcement authorities, Fairchild opened the door to a full and not just a selective development of that subject. United States v. Paquet, 484 F.2d 208 (5th Cir. 1973). Assuming the law would have excluded from evidence Fairchild's silence had he not broached the subject of cooperation, once he did broach it the bar was lowered and he discarded the shield which the law had created to protect him. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The fact that Fairchild's silence would have been excluded for constitutional reasons does not change the situation. Constitutional rights, like others, may be waived; and a criminal defendant may, by his conduct, make otherwise constitutionally inadmissible evidence admissible for certain purposes. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Here the evidence of Fairchild's Miranda silence was admissible for the purpose of rebutting the impression which he attempted to create: that he cooperated fully with the law enforcement authorities. Thus, it was not error for the trial court to admit Detective Hobbs' testimony concerning Fairchild's silence at the police station following his *Miranda* warnings.[8]

■ In his closing argument the prosecutor made the following comment:

> But one thing is for sure, Mr. Alton Robert Fairchild wouldn't say a thing. He was confronted right out there with this proposition . . . . He was confronted right out there with the proposition that nothing matches up—silence. He wouldn't even tell them where he lived. They had to drag it out of him. Now, why is that? It's because he knew what was going on, ladies and gentlemen.

We agree with Mr. Fairchild that this comment is a reference to his silence following his arrest and following his *Miranda* warnings. We also agree that this comment is an attempt to utilize his silence as direct evidence that he knew that the vehicles which he received were stolen. Since Fairchild's silence was admissible only for the purpose of rebutting the impression that he had actively cooperated with the police, this comment should have been excluded and a corrective instruction should have been given.

---

8. We recognize that some may argue that the exercise of a constitutional privilege may not be considered evidence of lack of cooperation. We would point out, however, that defense counsel was obviously trying to create the impression that Fairchild *actively* cooperated with the police in order to build up his client in the eyes of the jury (and possibly to counteract the presumption that the unexplained possession of recently stolen goods implies guilty knowledge). Thus, the question is not whether the exercise of a constitutional privilege to remain silent is, in the abstract, evidence of lack of cooperation but whether it refutes an inference of active cooperation. We believe that it does.

However, at the time that the comment was made no objection to it was raised. Thus, we are at liberty to take notice of the trial judge's error in failing to exclude the comment and in failing to give a corrective instruction only if it was plain error. F.R.Crim.P. 52(b).

 Courts have struggled valiantly to define plain error, see 3 Wright, Federal Practice and Procedure, Criminal § 856, 372–373 (1969), but the fact remains that "the ultimate decision whether or not to take notice of an error not raised below must depend on the facts of the particular case." United States v. Morales, 477 F.2d 1309, 1315 (5th Cir. 1973). After taking notice of all of the facts of this case, including the evidence both for and against Mr. Fairchild and the context within which the somewhat ambiguous prosecutor's comment [9] was made, we have concluded that the trial court's failure to strike the offending passage *sua sponte* and to issue a corrective instruction was not plain error.

Affirmed.

---

9. Having, as it does, a lingering fragrance of rebuttal: ". . . confronted right out there with the proposition that nothing matches up . . . ." may well refer to Fairchild's attempt to justify himself on the spot with title papers which did not tally in full with the Eldorado.