**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald DELK, Defendant-Appellant.**

No. 78–5120.

United States Court of Appeals,
Fifth Circuit.

Dec. 18, 1978.

Joe O. Sams, Jr., William G. Burgin, Jr., Columbus, Miss., for defendant-appellant.

H. M. Ray, U. S. Atty., Sam D. Knowlton, Alfred E. Moreton, III, Asst. U. S. Attys., Oxford, Miss., for plaintiff-appellee.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge.

As will hereinafter be related, the gist of this appeal arises from a disappointed reliance on the United States postal service.

Donald Delk was convicted on two counts of a three-count indictment for receiving, concealing, and storing stolen vehicles, 18 U.S.C. § 2313. He contends that the District Court committed reversible error when it admitted evidence in rebuttal which it had previously excluded from the government's case in chief, Rule 16(a)(1)(C), Fed. Rules Cr.Procedure. We affirm.

On October 7, 1977, Mr. Delk was indicted for three Dyer Act violations. Count 1 described a 1976 GMC pickup; Count 2, a 1974 Mercury Comet; and Count 3, a 1974 Jeep. The GMC pickup had been stolen in Alabama; the other vehicles had been stolen in Illinois. Delk acquired them in Mississippi.

Prior to arraignment, defense counsel filed a written request for general disclosure under Rule 16. As various documents and items of information became available they were mailed to the attorneys during the two months preceding trial.

On Wednesday before jury selection was scheduled to begin the following Monday (January 9) government counsel received from the FBI three automobile vehicle license tag receipts. That same day, copies of the receipts were mailed to defense counsel, who should have received them in Columbus the next day. But the mail moved slowly. On January 9 (Monday), before the letter containing the receipts reached their offices the attorneys left for jury selection in Oxford. Consequently, they did not know of the receipt of the documents.

These tag receipts indicated that each of the Delk vehicles was carrying an improper tag. The receipt for the license tag appearing on the 1976 GMC pickup [Count 1] showed that the tag had not been issued for that vehicle but for a 1974 Ford pickup. The tag receipt for the license tag on the 1974 Mercury Comet [Count 2] showed that the tag had been issued for a 1973 Mercury Comet with a vehicle identification number different to that for the 1974 Comet. Mrs. Sue Delk, appellant's wife, had obtained these two tags in Pickens County, Alabama. The Mississippi tag receipt matching the license tag of the 1974 Jeep [Count 3] showed that the tag had been issued for a 1970 Jeep registered to Timothy D. L. Tyler. In short, all three vehicles in Delk's possession, and the subject of this prosecution, were carrying tags issued for other cars or pickups.

The trial began on Tuesday morning, January 10. When the government attempted to introduce the first tag receipt, defense counsel objected that there had been no disclosure under Rule 16. The Court responded by giving appellant a two hour noon recess in which to prepare evidence and get witnesses to explain the documents. After the recess appellant's attorneys reported that they could not yet offer evidence to counter the documents. The Court offered to delay the case until the next day, but appellant suggested that they continue with the trial, omitting any reference to the tag receipts until the next day. The following morning, however, defense attorneys announced that the additional witnesses with reference to the tag receipts were unavailable and that they were in no better position than they had been the day before. They did not request a continuance.

At this point, although the Court exonerated the government attorney from responsibility for the delay, it did find that the appellant was prejudiced by the failure to disclose, and therefore, excluded the documents as part of the government's case in chief. The Court pointed out, however, that this did not necessarily mean that the receipts could not be used for other purposes.

The government completed its case in chief without the evidence as to the improper tags.

Throughout cross-examination of government witnesses and throughout defense presentation of its case, the essential element offered in defense was lack of *concealment.* It was repeatedly emphasized that the vehicles had been regularly and conspicuously used, were never physically hidden, and that numerous people other than the defendant had driven them.

As rebuttal to this "lack-of-concealment" evidence, the government offered the three disputed tag receipts as evidence that the vehicles had been operated while bearing improper tags. Appellant argued that this was improper rebuttal, but the Court overruled the objection and admitted the tag receipts. On surrebuttal, in an effort to negate the adverse inferences raised by the tag discrepancies, the defense adduced three witnesses, Delk's wife, his son, and his son's friend.

After a period of deliberation, the jury sent a note to the Judge, inquiring whether the evidence of an illegal tag could be considered concealment. In response to this the government wanted supplemental instructions giving examples of what constituted concealment. The defense opposed it. In line with the defense position, the Court declined further instructions. The jury returned a verdict of acquittal on Count 1 [the 1976 GMC pickup], but found Delk guilty on Counts 2 and 3. He was sentenced to two years imprisonment on Count 2 and to four years supervised probation on Count 3.

On appeal, Delk does not argue that the proof, if one includes the tag receipt evidence, was insufficient to support the conviction. His plea for reversal is grounded entirely upon the argument that "the lower court erred when it allowed the prosecution to introduce evidence in rebuttal that the prosecution obtained with intention for use in its case in chief without prior disclosure to the appellant. Such action violated the appellant's right to due process."

This argument is based on the specific provisions of Rule 16(a)(1)(C):

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

In considering and sustaining defense objections to the admission of the tag receipts in chief, the District Court quite correctly perceived the Rule 16(a)(1)(C) nature of the problem and stated from the Bench, "[I]t is unquestionable the documents are damaging to the defendant. No question about that." At another point the Court said, "[I]t would be difficult to conceive that the defendant has not been prejudiced by this failure to make disclosure."

On appeal, then, the question boils down to whether the tag receipts were properly admitted in rebuttal.

 In our analysis of this problem we do not consider the favorable testimony which defense counsel had elicited on cross-examination of government witnesses. This is so because it is well settled that the purpose of rebuttal testimony is "to explain, repel, counteract, or disprove the evidence of the *adverse party*" (emphasis added) and if the defendant opens the door to the line of testimony, he cannot successfully object to the prosecution "accepting the challenge and attempting to rebut the proposition asserted", *Luttrell v. United States,* 5 Cir., 1963, 320 F.2d 462, at 464.

We have, of course, carefully read the entire trial transcript. We now give a brief synopsis of the evidence adduced for the defense.

Over a period of several years D. A. Moore had worked part time in Delk's farming operations. He was familiar with the GMC pickup. It was used for many activities on the farm. Many different people drove it. He personally drove the truck all over the "field, Columbus, County, and off to other towns". He saw the truck practically every day and it was never hidden. Delk also had a Ford pickup. The GMC truck was parked at the house, in sight of a well travelled state highway. Mr. Delk, his three sons, and the hired hands drove the Jeep. It was parked in the same place as the GMC pickup. Mrs. Delk used the Comet as a family car most of the time. Its parking place was in sight of the highway.

Leon Brown, Jr., a neighbor, had seen Delk, a Mr. Faggert, Mr. Moore, the Delk children, and "the hired hand" operating the GMC pickup. He had seen the Jeep in the carport and the yard. He had seen the Comet in the carport and the yard. They were easily seen from State Highway 50. About a year after Delk obtained the GMC pickup it had been scratched up and he suggested that Delk have the places repaired and repainted.

The John Deere dealer in Columbus, of whom Delk was a customer, had seen Delk and his sons driving the GMC pickup over an extended period of time.

Hansel Wiygul, a member of the Mississippi Highway Safety Patrol for ten years, was assigned to Highway 50. He knew Donald Delk. He had operated radar speed control out of Delk's yard on the average of once a week for six or seven years. He had seen the vehicles in question. He had never heard that the Jeep was a stolen vehicle. The latter statement was contradicted, however, by another highway patrolman.

James L. Faggert lived across the road from Delk. During the period in question he knew that Delk had a Comet car, a 1-ton Ford, a GMC pickup, a Jeep, a Chevrolet bean truck. He had driven the truck, his son had driven the truck, as well as Delk, his sons, Moore, and Mrs. Delk. The truck was never concealed or hidden in any way. Mrs. Delk drove the Comet to and from her work. She and Mr. Delk drove the car to and from church. The Comet was parked in the carport, readily visible from the highway. Faggert, his sons, and numerous others, had driven the Jeep.

When the defense rested its proof, the prosecutor again came forward in rebuttal with the tag receipt evidence. The defense objected on Rule 16 grounds. The prosecutor replied that

The whole thrust of their defense was on the concealment issue and their evidence was in effect through their witnesses over and over again, as well as cross-examination of the government's witnesses, that Mr. Delk did not conceal those. It seems to me that it is definitely proper rebuttal evidence in that it shows that he did conceal them. If they had rested after character witnesses, for example, then I think they would be absolutely right, they would not have opened it up. They can't put on witness after witness to show there was no physical concealment and block us off from showing a different kind of concealment, which the Court knows is the pertinent kind in this case.

Defense counsel argued that they had never mentioned the tags; therefore they had not opened up that issue.

The Court decided that the tag evidence was appropriate rebuttal and admitted it.

On surrebuttal, Larry Delk, the twenty year old son of the defendant, testified that he had placed the tag on the Jeep, that he took it from a broken down Jeep belonging to Tim Tyler. Tyler was unavailable. Larry said his father did not know of the tag switch when it was done. The government prosecutor did not ask Larry if his father later found out about it. Dennis Faggert testified that he helped Larry switch the Jeep tags. He said that before it was done the elder Delk had ordered them not to do it. This could possibly infer that Delk saw the tag later, knew that his orders had not been followed, but nevertheless allowed the tag to remain on the Jeep.

Mrs. Sue Delk testified that in November, 1976, she went to Pickens County, Alabama (then not a title state) to buy a tag for the Comet. The tag was acquired on a bill of sale [which the government says was spurious], which she tendered the Alabama Clerk. This was the tag which showed up on the stolen Comet.

In March, 1977, Mrs. Delk went to Pickens County to buy a tag for her husband's Ford pickup. This was the tag later found on the GMC pickup, about which Delk was found not guilty. She was not cross-examined by the prosecutor. The proof for the government on its case in chief had shown, however, that Mr. Delk knew that his wife was going to adjoining Pickens County, Alabama, to get the tags. The 1973 Comet

tag showed up on the 1974 Comet and the Ford tag showed up on the GMC pickup. However, Delk was acquitted as to the pickup.

In sum, for appellate purposes we must consider that "concealment" consisted of switching a tag from one Jeep to another and putting a 1973 Comet tag on a 1974 Comet carrying a different serial number.

### Due Process

The major thrust of Delk's argument on appeal is aimed at an asserted violation of his due process rights. He claims that the government had a duty to disclose the tag receipt evidence to him, that it failed to do so, and that since the Court ruled the evidence inadmissible in chief it should have held likewise on rebuttal.

Appellant, quite naturally, bases his due process argument on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Supreme Court held that "the suppression by the prosecution of evidence *favorable* to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" [emphasis added], 373 U.S. at 87, 83 S.Ct. at 1196.

In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court reasoned that when defense counsel makes a general, rather than specific, request for disclosure the duty of the prosecution to respond "must derive from the obviously exculpatory character" of the evidence, 427 U.S. at 107, 96 S.Ct. at 2399. If the request is general, "the prosecution will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial", 427 U.S. at 108, 96 S.Ct. at 2400.

■ One who seeks to make out a successful *Brady* claim must establish three factors: (1) the prosecutor's suppression of the evidence, (2) the favorable character of the suppressed evidence for the defense, and (3) the materiality of the suppressed

evidence, *United States v. Anderson,* 5 Cir., 1978, 574 F.2d 1347, 1353 [relying on *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972)].

■ If we assume that the prosecutor failed to comply with Rule 16 as a result of choosing an ineffective means of transmitting the receipts, and conceding the materiality of the receipts, the appellant nevertheless fails on point 2—the tag receipts were not favorable to the defense. This is obviously true because their existence was well known to the defense before it came to bat with its own proof and it very wisely did not see fit to introduce them as exculpatory.

In a recent Fifth Circuit case, the standard as to non-disclosure following a general exculpatory request was applied, and the Court found that since the evidence was not "obviously exculpatory", the prosecutor had no duty to disclose it, *United States v. Rhodes,* 5 Cir., 1978, 569 F.2d 384 at 387, 388. *See also United States v. Mackey,* 7 Cir., 1978, 571 F.2d 376 at 388, 389.

Additionally, the tag evidence in this case was not suppressed. Its disclosure was delayed by inadvertence.

We are unable, therefore, to agree with the appellant's constitutionally grounded Due Process argument.

This leaves us to a consideration of the arguments as to

### Improper Rebuttal and Rule 16(a)(1)(C) Infractions

■ A serious point in the case, and one which the Court has not taken lightly, is whether the government's failure to disclose, however inadvertent, denied access to items "which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial", Rule 16(a)(1)(C), Federal Rules of Cr. Procedure, and thereby prejudiced the right of the defendant to a fair trial.

Rule 16(d)(2) prescribes the remedy for failure to comply with a disclosure request:

If at any time during the course of the proceedings it is brought to the attention

of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

We must remember that the defendant requested no continuance when unexpectedly confronted with the certified copies of the tag receipts which, in turn, disclosed that the vehicles in question had been improperly tagged. Moreover, the Court declined to permit the use of the tag receipts as a part of the government's case in chief. Additionally, the testimony on behalf of the government reflected admissions by Mr. Delk that he knew his wife had gone to Alabama to get the tags, which, undoubtedly, were accompanied by the appropriate receipts from which the government later obtained the certified copies. Thus, common sense dictates that the defendant must be charged with knowledge, all along, that the receipts were in existence. The surprise was that the government had obtained certified copies. The government was not allowed to use them in its case in chief. That did not occur until the rebuttal stage of the trial.

■ This brings us to the final question in the case: Were these tag receipts proper rebuttal?

We would attribute no significance to this point except for the distinction pointed out by defense counsel that it had offered no evidence with reference to the tags. It had, however, offered extensive evidence demonstrating that there had been no physical concealment of the vehicles. This Court has recognized that changing a license plate is one form of concealment, *United States v. Sherriff*, 5 Cir., 1977, 546 F.2d 604, 608.

We are compelled to hold that when the defendant bore down so extensively on lack of physical concealment, the government was entitled to rebut this with proof that he was nevertheless guilty of concealment in another form. The relevant issue was not whether concealment had been effected by a specific method but whether it had been accomplished at all. And in this respect, we think the jury was entitled to receive this proof and to consider that the defendant knew he had not obtained bills of sale for these vehicles (although he claimed in his statements to the officers that he had been promised them); the defendant knew that he could not obtain license plates for the vehicles where he should have legally bought them, in Mississippi, which was a title state; and he circumvented this by sending to Alabama for them. It would be quite unreasonable to suppose that the defendant had not seen the tags thus acquired after they had been attached to the vehicles and thereafter in constant use.

■ Finally, there was no error in allowing on rebuttal that which had been held impermissible in chief. See *United States v. Fairchild*, 5 Cir., 1975, 505 F.2d 1378.[1]

The judgment of the District Court is AFFIRMED.

---

1. Fairchild was being tried for a Dyer Act violation. In presenting his case he tried to create the impression that he had been fully cooperative with the FBI and the United States Attorney's office. In rebuttal, the government offered otherwise inadmissible evidence as to his silence after a *Miranda* warning. The Court upheld the admission of the evidence for the purpose of rebutting the impression of cooperation which he had attempted to create, saying that " . . . once he did broach [the subject of cooperation] the bar was lowered and he discarded the shield which the law had created to protect him", 505 F.2d at 1383.