STEWART, J.
_JjThe defendant, Samuel Washington, was charged with possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. He was convicted of possession of cocaine with intent to distribute and of the responsive verdict of possession of marijuana. He was sentenced to serve 20 years’ imprisonment at hard labor for the cocaine conviction and a concurrent six-month term for the marijuana conviction. He now appeals, urging one counseled assignment of error and five pro se assignments. The defendant’s counseled assignment of error, which alleges ineffective assistance of counsel, is substantial. For reasons discussed below, we set aside the defendant’s conviction and sentence, and remand the case for a new trial.
FACTS
In 2007, the Richland Parish Sheriffs Office (“RPSO”) received a tip that the defendant, Samuel Washington, was selling narcotics from a home on Edgar Street in Delhi, Louisiana. On July 24, 2007, investigators employed a confidential informant who allegedly bought cocaine from the defendant.[1] Based upon that purchase and other information gathered through surveillance, the agents sought a search warrant for the home. Investigator Brandon Fleming prepared an affidavit in support of the warrant, which alleged that the occupants of the residence were a Samuel Boston[2] and a Kimberly Criss. A district judge signed the warrant, and a tactical team executed the warrant that same evening.
12Three RPSO agents, Brandon Fleming, Joel Williams and Perry Fleming, followed the tactical team into the defendant’s home. They discovered that he was not present. Four young adult males, Devon Williams, Samuel Boston, Jr., Lee Arthur Jones, and Devaun Jones, were present in the home. The agents detained and searched the young men, but found no narcotics. The agents then searched the home.
Brandon Fleming conducted the search. In plain view on top of a television, he located a baggie containing about six grams of powder cocaine (worth about $600) and a small paper bag containing marijuana. In the back bedroom, Fleming found a small pile of loose marijuana atop the dresser. The total weight of marijuana from the bag on top of the television and the pile on the dresser was 3.2 grams. In a drawer in that same dresser, he found a baggie containing about ten rocks of crack cocaine, worth about $20 each. In *425 addition, the agents found a set of digital scales in the kitchen, some rolling papers and tobacco cigars, a paper bag containing what one agent described as “cigar guts tobacco,” and some sandwich bags.
The agents also found recent utility bills for the house addressed to the defendant, and a document and a prescription pill bottle containing antibiotics bearing the name Lashanna Humes.
The agents arrested the four young men who were at the house.[3] Later that evening, the defendant learned that his house had been raided, so he turned himself in to RPSO. He was arrested and charged with possession of | scocaine and marijuana with intent to distribute, as well as conspiracy to distribute those substances.[4]
The defendant was appointed an attorney, but in 2009, he retained a new attorney. New counsel engaged in substantial pretrial motion practice, including filing a motion for discovery, a motion for a preliminary examination, a motion to identify the confidential informant, a motion to suppress the drug evidence, an opposition to other crimes evidence, a motion for the criminal records and pending charges against all state’s witnesses, and a motion to quash for untimely prosecution.
The court conducted a hearing on the motion to produce the identity of the informant and the motion to suppress the drug evidence. At this hearing, the court denied the motion to produce the identity of the informant, and further ordered that the state would not be allowed to make any reference at trial to the purchase by the informant.
The motion to suppress the drug evidence alleged that the information in the affidavit supporting the warrant was inaccurate. The court heard testimony from Fleming, who reported that the RPSO received numerous complaints from the defendant’s neighbors regarding traffic in and out of the defendant’s house, and that the RPSO had also obtained information from the Delhi Police Department. Fleming said that he and other agents met with an informant that the RPSO had used before, searched him to ensure he had no drugs, gave him money, and followed him to the defendant’s house. The informant then went into the house, came back out, and then met the agents at ^another location about five minutes later. The informant produced powder cocaine that he had purchased and advised that he made the purchase from the defendant. Fleming then prepared an affidavit in support of a search warrant, which stated, in part:
This residence is occupied by Samuel Boston and Kimberly Criss.
[[Image here]]
This affiant has received information from informants, complainants in the area and other police officer of illegal narcotics sell’s [sic ] from this house located at 115 Edger St Delhi, La, 71232. On 7-24-2007 at approx. 2:35 P.M. a Reliable Confidential Informant was given money to purchase Powder Cocaine from Samuel Boston at his house located 115 Edgar St. Reliable Confidential Informant went to that residence and purchased One Hundred Dollars ($100.00) worth of Powder Cocaine from Samuel Boston. This buy was made at approx. 2:46 P.M. and was controlled through surveillance. A short time later the R.C.I. turned the evidence over to me and advised that Boston went to a back room and returned with the powder Co *426 caine. R.C.I. Advised that he / she saw a bag of marijuana on the pool table.
The court denied the motion to suppress, finding the information in the affidavit sufficiently correct. The trial court also denied the motion to quash, citing the defendant’s choice in changing counsel as the justification for the delay.
At the opening of the trial on May 25, 2010, the jury heard, by stipulation, that the defendant had a prior conviction in Richland Parish for possession of cocaine under the name Samuel Tyronne Boston. This conviction occurred on October 15, 2002.
The jury heard testimony from all three of the agents from the Richland Parish Sheriffs Office who participated in the search. During cross-examination, the jury was made aware of the discrepancies between the | information in the search warrant and the facts as discovered after the search, including the fact that no evidence was found to show that Kimberly Criss was a resident of the home and that no marijuana was found on the pool table. Defendant’s counsel offered the search warrant into evidence; the court admitted the document as Exhibit D-2 and it was published to the jury.
Devaun Jones, who was one of the four young men at the defendant’s house when the warrant was executed, testified that he and the defendant had cleaned the home’s carpet earlier that day. Although he admitted that he had previously smoked marijuana, he denied possession of any drugs or having any knowledge of the drugs in the defendant’s home on the day in question. He also said that he had never been to the back bedroom. He further testified that he did not see any of the three other men in possession of any drugs in the defendant’s home.
Dustin Dykes, who was with the defendant away from the home at the time the warrant was executed, testified that he had been in the house earlier that day and had seen no drugs there.
Tamarcus Jones testified that during the day of July 24, 2007, he, Devaun Jones and the defendant cleaned the floor of the home. He explained that they had taken all of the furniture out of the living room and moved it outside before cleaning the floor. He related that they did not move the television. Jones said that he did not see any drugs in the home while he was there, nor had he seen the defendant sell any drugs to anyone. After finishing the cleaning, he, the defendant and Dustin Dykes left the home to get food and to go to the store. They were not there at the time the police arrived.
|(¡Samuel Lee Boston, Jr., who is the defendant’s cousin, testified that while he was at the house that day, he had seen marijuana sitting on the couch between Devaun Jones and Lee Arthur Jones. On cross-examination, Boston, Jr. admitted that he had previously told the prosecutor that he had not seen any marijuana in the house prior to the raid.
In the jury instructions, the court advised the jury that the accused may choose not testify in his own behalf, and if he does not, that fact cannot be construed against him. However, they were not instructed that the defendant’s silence after his arrest was not substantive evidence of his guilt.
The jury returned verdicts of guilty of possession of cocaine with intent to distribute and possession of marijuana. The vote was 10-2 on the cocaine charge and 11-1 on the marijuana charge.
At sentencing, the judge reviewed the defendant’s presentence investigation report and six letters from friends attesting to his character. The judge recognized *427 that the defendant had an employment history, but also noted that he had a prior drug conviction and had subsequently been arrested on another drug-related matter. As mentioned earlier in the opinion, the judge sentenced Washington to serve 20 years’ imprisonment at hard labor for the cocaine conviction and, concurrently and with credit for time served, six months in the parish jail for the marijuana conviction. The defendant did not object to the sentences and this record does not contain a motion to reconsider sentence. The defendant now appeals.
|7LAW and discussion

Ineffective Assistance of Counsel

In the first assignment of error, the defendant contends that the defense counsel’s ineffectiveness at trial resulted in the denial of a fair trial to him.
In alleging ineffective assistance of counsel, a defendant must satisfy a two-pronged test by showing, first, his attorney’s performance to be so deficient as to deny him the “counsel” guaranteed by the Sixth Amendment, and second, that those errors are so serious as to deprive the accused of a fair proceeding, i.e., one with a reliable result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Washington, 491 So.2d 1337 (La.1986). In order to prevail under the Strickland test, the defendant must demonstrate a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. State v. Gipson, 28,113 (La.App. 2 Cir. 6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court rather than by appeal. This is because PCR creates the opportunity for a full evidentia-ry hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 07-2190 (La.4/4/08), 978 So.2d 325.
In some instances, defense counsel may be ineffective for “opening the door” to allow the prosecutor to take advantage of the defendant’s post-arrest, |8post-Mi-randa silence. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673. In the instant case, the record is sufficient to review the defendant’s claim of ineffective assistance of counsel.
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that a state may not impeach a defendant’s testimony at trial with evidence that he remained silent immediately after his arrest and after receiving the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In a case like this one, where the defendant does not take the stand, “there is even less justification here for the State to call attention to his silence at the time of arrest than there was in Doyle, because the argument cannot be made that he was under cross-examination and thus fair game for impeachment by use of his silence at the time of his arrest.” State v. Montoya, 340 So.2d 557, 560 (La.1976).
The contemporaneous objection rule is that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. La. C. Cr. P. 841; State v. McGee, 39,336 (La.App. 2 Cir. 3/04/05), 895 So.2d 780. *428 Doyle errors are subject to the contemporaneous objection rule unless the error casts substantial doubt on the reliability of the fact-finding process. State v. Langston, 43,923 (La.App.2d Cir.2/25/09), 3 So.3d 707, writ denied, 2009-0696 (La.12/11/09), 23 So.3d 912. Likewise, such errors are subject to harmless error analysis. Langston, supra; State v. Bradley, 43,593 (La.App.2d Cir.10/29/08), 997 So.2d 694, writ denied, 2008-2997 (La.9/18/09), 17 So.3d 384, certiorari denied, Bradley v. Louisiana, — U.S. -, 130 S.Ct. 2093, 176 L.Ed.2d 723 (2010).
Under some circumstances, the state may permissibly make a limited reference to a defendant’s post-arrest, post-Miranda silence. As the court explained in U.S. v. Martinez-Larraga, 517 F.3d 258 (5th Cir.2008):
However, Doyle also expressly recognizes that a prosecutor’s reference to a defendant’s post-Miranda silence may properly be made where it is not “used to impeach” the defendant’s “exculpatory story,” or as substantive evidence of guilt, but rather to respond to some contention of the defendant concerning his post-arrest behavior. See 96 S.Ct. at 2245 n. 11 (citing United States v. Fairchild, 505 F.2d 1378, 1383 (5th Cir.1975)). In Fairchild we stated that where the defendant had “opened the door” respecting his post-arrest interaction with the authorities “he discarded the shield which the law had created to protect him” from comment on his post-arrest silence, although the prosecution still could not go beyond a proper response so as to use the silence “as direct evidence” of guilt. Id., 505 F.2d at 1383. We, and other circuits, have continued to recognize this “open the door” or “reply” exception to Doyle, see, e.g., United States v. Allston, 613 F.2d 609, 611 (5th Cir.1980); United States v. Shue, 766 F.2d 1122, 1129 (7th Cir.1985), while likewise recognizing that it does not permit the prosecution to argue “that the jury should infer ... [the defendant’s] guilt directly from his post-arrest silence.” United States v. Rodriguez, 260 F.3d 416, 421 (5th Cir.2001).
In this case, we note that Fleming briefly testified about the defendant’s booking at the detention center, but the exact timing and circumstances of the arrest are not made clear, and no mention is made of any Miranda warning.
During cross-examination, the defense counsel questioned Investigator Fleming about the items in the house that belonged to other people and whether those people had been charged in connection with the narcotics. |inFleming related that he had spoken with Ms. Criss in the course of the investigation and learned that she was not living there at the time. Counsel then asked Fleming about the drugs found on top of the television, whether the drugs could have been in the possession of the four young men in the house, and the statements made by these men. He related that each of the young men said that they had not seen the drugs sitting on top of the television set. Next, they had this exchange:
Defense: Could anyone have been able to see what’s on top of the TV that they were watching and playing games on?
Fleming: I have no idea.
Defense: You have no idea? And I assume this goes for all the people that were playing that game, correct? They all told you they did not see it, they didn’t know it was there? Correct?
Fleming: Right. Yes, sir.
*429 Defense: Did Samuel Boston, did — the junior cousin of Mr. Washington told you the same thing?
Fleming: Yes, sir.
Defense: That he didn’t see anything there? Did Mr. Washington here told [sic ] you he saw anything there or he knew those things were there? Yes or no?
Fleming: Sir?
Defense: Did Mr. Washington tell you that he knows [sic] those drugs were there? Yes orno?
Fleming: Did he tell me that ...
Defense: Yes.
Fleming: ... that he knew it?
| uDefense: Right.
Fleming: They didn’t give us an interview, sir.
Defense: Correct. But did tell [sic] you if he knew anything was there, correct?
Fleming: He did or didn’t? I can’t understand.
Defense: Did he or did he not?
Fleming: He did not tell us nothing.
(Emphasis added.) In the emphasized remarks, Washington’s attorney asked the agent whether the defendant made any statements to the agents about the drugs. We note that the jury had never heard any substantial details about Mr. Washington’s arrest, nor did they hear anything regarding whether the defendant was provided his Miranda rights.
On redirect examination, the prosecutor engaged the investigator in this colloquy:
Prosecutor: Investigator Fleming, you were asked ... I believe the question was “What did Mr. Washington tell you about the drugs?” Do you remember that response?
Fleming: Yes, sir. He didn’t respond, didn’t say nothing.
Prosecutor: Okay. Defense counsel asked you that question, correct?
Fleming: Yes, sir.
Prosecutor: He didn’t say anything to you about them?
Fleming: No, sir.
Prosecutor: Did you give him the opportunity?
Fleming: Yes, sir.
Prosecutor: Did yOu ask him about them?
| ^Fleming: Yes, sir.
Prosecutor: Did he deny that they were his?
Fleming: No, sir.
Prosecutor: Did he say they were Mr. Jones’?
Fleming: No, sir.
Prosecutor: Did he say they were Ms. Humes’, they weren’t mine?
Fleming: No, sir.
Prosecutor: Did he say they were Ms. Criss’, they’re not mine?
Fleming: No, sir.
Prosecutor: Did he say they were Mr. Williams’ who was there?
Fleming: No, sir.
Prosecutor: Did he point to any other person and say, “Those belonged to them, not me?”
Fleming: No, sir.
Prosecutor: Did he cooperate with you in any way?
Fleming: No, sir.
Prosecutor: Did the four young men who were there when you got there cooperate with you?
Fleming: Yes, sir.
Prosecutor: Did they deny it?
Fleming: No, sir, they said they had no idea the dope was in the house.
*430 Counsel for the defendant did not object to the prosecutor’s questions to the investigator about whether the defendant had made any statements denying knowledge of the drugs.
|1sBoth parties questioned the investigator extensively about his investigation, because a key issue in the case was the ownership, or at least the control of, the narcotics. At the time the search warrant was executed, the defendant was not present, yet the biggest quantity of cocaine discovered was in plain view of the four people sitting nearby.
The state argues that the defendant’s choice to question Investigator Fleming about the defendant’s “post-arrest” statements, and silence, opened the door to further questions and comment by the prosecutor about that silence. On redirect examination, the prosecutor emphasized the point that no party had confessed to owning the drugs and that the four young men nearest the drugs had cooperated in the investigation. The prosecutor was within the “opened door” of relevancy to ask whether the investigator gave the defendant the opportunity to make a statement, and perhaps whether the defendant attempted to blame any other person.
Counsel’s decision to ask the investigator if the defendant had made any statements to him is arguably a strategic move on his part, and not an act of ineffective assistance. Since the defense counsel opened the door to that line of questioning, the prosecutor’s questions were proper.
At the close of the evidence, the prosecutor gave a closing argument, as did defense counsel. On rebuttal argument, the prosecutor stated:
... I want to ask you this question. Have you heard one piece of evidence in this case that these drugs belonged to anybody else other than this defendant? Have you heard anybody else in this case say “Well, I saw so and so with the cocaine, I saw so and so with the crack, I saw so and so with the powder?” No. All his friends and family that have come and testified about who these drugs belonged to, not one single one of them said it belonged to somebody else.
114Pefense counsel opened the door for this and he asked Investigator Fleming sitting right here, he said, “Investigator Fleming, what did my client Mr. Washington tell you about those drugs?” He didn’t tell him anything about those drugs. He didn’t say anything. He never once when given the opportunity denied they were his drugs, he never once when given the opportunity said “Those aren’t my drugs, Investigator Fleming, I can tell you who they are, they belong to so and so.” He didn’t do that. He didn’t say “I don’t know anything about the drugs. I don’t know why they’re there.” He didn’t say that opportunity [sic]. Ladies and gentlemen if — if any one of you here today had got accused of drugs you would yell from the rooftops “Officer, I have no idea how those drugs got in my house! I don’t know why they’re there. I didn’t see them, they’re not mine, I’m telling you the truth.” When given that opportunity there was deafening silence. That tells more about this than anything. He marches all these friends and family in here to say this and that but not one single one of them said that cocaine belonged to anybody else but this defendant. We would all be screaming our innocence, “It doesn’t belong to me” when given that ...
Defense: Objection, your honor.
Court: Thank you.
Defense: That’s ...
Court: Objection sustained.
*431 Defense: And I will — I will request that I be able to rebut that too, Judge.
Prosecutor: No, there’s no rebuttal.
Court: There’s no rebuttal.
Defense: Well ...
Though counsel objected to the prosecutor’s use of the defendant’s silence as evidence of his guilt during his closing argument, he should have immediately moved for a mistrial pursuant to La. C. Cr. P. art. 770, which states:
| isUpon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Under La. C. Cr. P. art. 771, where the prosecutor or a witness makes a reference to a defendant’s post-arrest silence, the trial judge is required, upon the request of the defendant or the state, promptly to admonish the jury. In cases where the trial judge is satisfied that an admonition is not sufficient to assure the defendant a fair trial, upon motion of the defendant, the trial judge may grant a mistrial. State v. Kersey, 406 So.2d 555 (La.1981).
In this case, the defense counsel should have requested a mistrial. Based on the trial court’s act of quickly sustaining counsel’s objection, it is clear that it recognized the negative impact that the prosecutor’s comments could have on the jury. At the very least, counsel should have requested that the trial court admonish the jury to disregard the prosecutor’s comments regarding the defendant’s failure to talk to Fleming.
| ^Although counsel objected to the prosecutor’s argument, and that objection was sustained, counsel did not move for a mistrial, nor did counsel request an admonition. If an objection is sustained, the defendant cannot on appeal complain of the alleged error unless at the trial level he had requested and had been denied either admonition to disregard or a mistrial. State v. Robertson, 97-0177, p. 40 (La.3/4/98), 712 So.2d 8, 42, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998).
The prosecutor’s comments are not harmless in this case. The prosecutor’s closing argument clearly overreached the “open door” doctrine by asking the jurors to speculate what they would have done if wrongly accused of possessing drugs. With these remarks, the prosecutor was openly using the defendant’s silence as substantive evidence of the defendant’s guilt, saying: “When given that opportunity, there was deafening silence. That tells more about this than anything.” The prosecutor exploited all of the leeway allowed by the questions asked by defense counsel during Fleming’s cross-examination, and then invited the jury to consider *432 Washington’s silence as proof that he possessed the drugs. “[T]he prosecution still could not go beyond a proper response so as to use the silence ‘as direct evidence’ of guilt.” Martinez-Larraga, supra.
This case is based on circumstantial evidence. The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to be proved, in order to convict, it must exclude every reasonable hypothesis of. innocence. La. R.S. 15:438. The circumstantial evidence provision set forth in La. R.S. 15:438 does not establish a stricter standard of 117review than the more general Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), formula, but a hypothesis of innocence that is sufficiently reasonable and strong must necessarily lead a rational finder to entertain a reasonable doubt as to guilt. State v. Moore, 46,252 (La.App. 2 Cir. 5/18/11), 69 So.3d 523; State v. Charleston, 33,393 (La.App. 2 Cir. 6/23/00), 764 So.2d 322, writ denied, 00-2603 (La.9/14/01), 796 So.2d 672. Circumstantial evidence consists of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Moore, supra; State v. Major, 604 So.2d 137 (La.App. 2 Cir.1992), writ denied, 609 So.2d 255 (La.1992).
The photos show that the bulk of the cocaine, which was approximately six grams, was in a clear plastic bag on top of the television that was being used by the four young men playing a video game. A brown paper sack containing marijuana was also found on top of the television. Tamarcus Jones testified that Devaun Jones smoked marijuana, and that he saw Devaun with “something in a brown paper bag” in his pocket that day. Tamarcus related that Devaun did not want anybody to see the contents of this brown paper bag. Samuel Boston, Jr., testified that he too was aware that Devaun smoked marijuana. Boston, Jr. stated that he saw marijuana on the couch between Devaun Jones and Lee Jones that day. Each of these young men had a strong motive to lie and deny knowledge of the drugs, which were not hidden in any way.
| lsAfter a careful review of the record, we note that it is absent of any indication that the bedroom where a portion of the drugs were found belonged to the defendant. The state failed to present any evidence that the defendant’s belongings were located in the bedroom, or in the chest of drawers containing the drugs. The defendant’s brother, William Washington, testified that the bedroom in question was a spare bedroom, and that no one stayed in there. While the state tendered electricity and gas bills in the defendant’s name, they did not show that they were located in the bedroom with the drugs.
There was evidence that the defendant was not the sole resident of the house. William testified that he stayed at the house approximately three times a week, including the night before the execution of the warrant, and that Humes also stayed there. William also stated that his mother rented the house. The police also failed to collect any fingerprints on the drugs seized that would link the defendant to the drugs.
Considering the fact that the felony conviction is for possession with intent to distribute, and the bulk of the cocaine was in the living room with the guests, we cannot say that the error of allowing the jury to consider the defendant’s silence as evidence of guilt had no effect on the verdict. Given that this case is based on circumstantial evidence, the prejudicial inference raised by the prosecution’s argument clearly was detrimental to the defendant’s defense. There is a strong likelihood that the jury concluded that the defendant’s failure to speak up meant that he was *433 admitting to possession of all of the drugs. The jury obviously did not believe the theory that the defendant intended to distribute the small amount of marijuana seized. This |19is a strong indication that counsel’s failure to move for a mistrial significantly impacted the outcome of the case. Had counsel moved for and been granted a mistrial, the prosecutor’s extremely prejudicial remarks would not have been considered by the jury. An admonishment would have lessened the impact on the jury at the least.
The defendant has made a good showing that his trial counsel made serious errors during the trial, and the reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. Counsel should have moved for a mistrial, or in the alternative, asked for the court to admonish the jury. His failure to do so indicates that the defendant received ineffective assistance of counsel. This assignment of error alleging ineffective assistance of counsel warrants reversal of the defendant’s convictions and sentences and a new trial.

Pro Se Assignments of Error

Since we are setting aside the defendant’s convictions and sentences and remanding the case for a new trial, the defendant’s pro se assignments of error are pretermitted.
CONCLUSION
The defendant’s trial counsel erred by opening the door to questioning about the defendant’s post-arrest silence, and that error was compounded by the questions and argument of the prosecutor that went far beyond the matters put at issue by defense counsel. For the foregoing reasons, the defendant’s conviction and sentence are set aside, and the case remanded for a new trial.
JjgCONVICTIONS AND SENTENCES SET ASIDE; CASE REMANDED FOR NEW TRIAL.
BROWN, Chief Judge, dissents with written reasons.

. The jury did not hear evidence about the informant or this sale.

. Boston is a family name, but the defendant now goes by Samuel Washington.

. Based upon subsequent interviews, the prosecutor did not pursue drug charges against these men.

. The conspiracy charges were dismissed at trial.