446 So.2d 1191 (1984)
STATE of Louisiana
v.
Frederick J. BELL.
No. 82-KA-2235.
Supreme Court of Louisiana.
February 27, 1984.
William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Bernard E. Boudreaux, Dist. Atty., J. Phil Haney, Asst. Dist. Atty., for plaintiff-appellee.
Paul deMahy, St. Martinville, for defendant-appellant.
CALOGERO, Justice.
The state charged defendant Frederick J. Bell with three counts of forgery, in violation of La.R.S. 14:72. Following trial a six-member jury returned a unanimous verdict of guilty as charged on each count. Thereafter, the judge sentenced defendant to serve three years at hard labor on count one, five years at hard labor on count two and five years at hard labor on count three, with the sentences to run consecutively.[1] On appeal to this Court defendant presents in two assignments of error one argument concerning the prosecutor's reference to defendant's post arrest silence. Upon review we find the defendant's argument not meritorious and affirm the conviction.
The following sequence of events forms the basis for the charges in this case. On July 14, 1981, defendant presented a check at a branch of the St. Martin Bank and Trust. The check was made out to defendant as payee and bore a purported signature of one "Lorena Burke Jacquet". Defendant told the teller that his grandmother (Mrs. Jacquet) could not come to the bank and needed money to pay for some work being done for Antoine Cormier, an interdict for whom Mrs. Jacquet was the curator. The teller cashed the check. The following day defendant cashed another check, also purportedly signed by Mrs. Jacquet, and gave the same reason. Later that same day defendant cashed a third check, explaining that the other checks had been insufficient to pay for the work being done.
Some time later Mrs. Jacquet discovered that the account was overdrawn. She went to the bank to investigate the matter. She saw the checks, and informed the bank *1192 personnel that the signature was not hers. A comparison of the signature on the checks with that on the signature card confirmed this. The bank reimbursed Mrs. Jacquet for the amount of the checks.

ASSIGNMENTS OF ERROR NUMBERS 1 AND 4
With these assignments defendant contends that the trial court erred in not granting a mistrial when the prosecutor referred to defendant's post-arrest silence.
In the course of Detective Robert A. LeBlanc's testimony about the forgery investigation and about defendant's arrest for the crime, the following exchange took place:.
Q. And, after he was brought to the Sheriff's office, what did you do?
A. I asked him if he wanted to make a statement, and he refused.
* * * * * *
Q. Did he at any time tell you his involvement in this particular matter?
A. No, sir.
BY MR. DEMAHY: Objection, Your Honor.
Defense counsel thereupon recited his objection to the state's eliciting from the officer the information that defendant did not tell of his involvement, or make a statement concerning his involvement in the matter, noting that the officer's answer emphasized the fact that Bell had exercised his right against self-incrimination. The court overruled the objection.
Later Bell testified in his own behalf, asserting that his grandmother had told him to get whatever Antoine Cormier needed and that Mr. Cormier had needed some food and some plumbing repairs. During cross-examination the prosecutor asked the defendant: "When you got arrested for this and Detective LeBlanc wanted to give you a chance to tell him what happened, you didn't tell him?" Again defense counsel objected and moved for a mistrial. The judge overruled the objection. The prosecutor asked defendant whether he had explained what had taken place, to which the defendant answered, "No."
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court was presented with the question of whether a state prosecutor may impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest. Quoting the concurrence of Justice White in United States v. Hale, 422 U.S. 171 at 182-83, 95 S.Ct. 2133 at 2139, 45 L.Ed.2d 99 (1975) the Court explained:
... it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. 426 U.S. at 619, 96 S.Ct. at 2245.
Therefore the Court in Doyle held that "the use for impeachment purposes of petitioners' silence, at the time of arrest, and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." In so concluding, however, the Court noted at 426 U.S. 619, n. 11, 96 S.Ct. 2245, n. 11:
It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. Cf. United States v. Fairchild, 505 F.2d 1378, (CA5 1975).
Based upon Doyle, this Court reversed a conviction when the prosecutor persistently cross-examined a defendant about his failure to tell his exculpatory story at the time of his arrest. State v. Sam, 412 So.2d 1082 (La.1982). In Sam, however, we noted the Doyle Court's recognition that, under certain circumstances, a reference by the prosecutor to a defendant's post-arrest silence *1193 is permissible. 412 So.2d at 1084, n. 1, quoting Doyle 426 U.S. 619, n. 11, 96 S.Ct. 2245, n. 11 and citing United States v. Fairchild.
In examining the Fairchild opinion which has been cited approvingly in both Doyle and Sam, and for the following reasons, we find that this case presents one of those circumstances when reference to the defendant's post-arrest silence is not an impermissible violation of his Fifth Amendment rights, nor is it fundamentally unfair or a deprivation of due process under the Fourteenth Amendment.
In United States v. Fairchild, 505 F.2d 1378 (5th Cir.1975), as part of his defense to charges of receiving and concealing two stolen automobiles in violation of the Dyer Act, 18 U.S.C. § 2313, counsel had alluded to Fairchild's active cooperation with the police, the court found, "in order to build up his client in the eyes of the jury." 505 F.2d at 1383, n. 8. In examining the reasons for not permitting prosecutorial comment on a defendant's post-arrest, postMiranda silence, the court stated at 505 F.2d 1383:

Miranda established that the prosecution may not use as a part of its case in chief a criminal defendant's silence following his arrest and warning. This evidence, even though it might be relevant and probative, is normally excluded. But it is important to note that it is excluded for the purpose of protecting certain rights of the defendant. It is not excluded so that the defendant may freely and falsely create the impression that he has cooperated with the police when, in fact, he has not.... Assuming the law would have excluded from evidence Fairchild's silence had he not broached the subject of cooperation, once he did broach it the bar was lowered and he discarded the shield which the law had created to protect him. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). (Emphasis provided)
The United States Fifth Circuit Court of Appeal concluded that "evidence of Fairchild's Miranda silence was admissible for the purpose of rebutting the impression which he attempted to create: that he cooperated fully with the law enforcement authorities." 505 F.2d 1383.
Thus we see that the Doyle proscription against referring to a defendant's post-arrest silence is not without exceptions. Doyle itself stated that a defendant's earlier silence may be shown to rebut a defense contention that the defendant had given an exculpatory story to the police after his arrest. In Fairchild, a defendant's post-arrest silence was admissible to rebut a contention of active cooperation with the police when in fact the defendant had invoked his Fifth Amendment rights.
Additionally we have refused to reverse a conviction because a prosecutor referred to the defendant's failure to sign the rights form in order to counter suggestions that the defendant's attitude at the time of his arrest was one of nonchalance. State v. Brown, 395 So.2d 1301 (La.1981).[2]
The case we review here is another situation in which it can be fairly said that the defendant invited the state's inquiry into *1194 what happened in the early stages of the investigation. The state had a legitimate purpose in questioning the defendant and the investigating officer about the defendant's arrest and defendant's opportunity to explain what had happened. That was to rebut a defense contention that the prosecutor had failed to investigate the matter thoroughly before bringing charges against the defendant. Only coincidentally was there at the same time a prejudicial effect upon the defendant when this exploration also pointed up his post-arrest silence. The defendant himself broached the subject of a lack of investigation, which prompted the state's attempt at refutation. The incidental consequence was that the defense lowered the bar and "discarded the [Fifth Amendment] shield which the law had created to protect him." 505 F.2d 1383.
In his opening statement in this case, defense counsel raised the issue of the state's failure to investigate the case before bringing forgery charges against the defendant. The following portion of defendant's opening statement provides:
We're going to admit Frederick Bell will get up on the witness stand to tell you that he cashed that check at St. Martin Bank. He's not required to get up and say anything. But, we want you to hear his side of the story. He's going to get up and say he cashed those three checks at St. Martin Bank, that he signed Lorena B. Jacquet's name to those three checks that he cashed at St. Martin Bank. But, let me explain the situation under which it happened.
Defense counsel then presented the sequence of events from the defendant's perspective, including his grandmother's being out of town and having instructed him to cash the checks to care for the needs of Antoine Cormier in her absence. In concluding, defense counsel made these additional observations:
You may be asking yourselfif this is true, why have these charges been brought against Frederick Bell? Why has he been accused of forgery? I can't answer that question for you because I didn't accuse him. I didn't bring the charges against him. It may be, you knowI'm not trying to say that something illegal has been done by the prosecutor. I'm not trying to chastise the prosecutor. But, people make mistakes. They don't investigate thoroughly. Possibly that's the situation here. I just can't tell you why the charges were brought, but I can tell you they were unjustly brought.
Defense counsel was clearly making reference to the state's failure to investigate, in order to boost his client's position in the eyes of the jury by inferring that he was unjustly, or mistakenly, charged with forgery.
In this case since defense counsel suggested to the jury that the state had failed to investigate the matter, and implied that, had it been investigated properly, the forgery charges would not have been brought against the defendant, the state was allowed to respond by asking the defendant and the investigating officers whether or not they tried to determine the defendant's involvement by questioning him at the time of his arrest. The defendant may not tell the jury that the state's case is the result of improper investigation without allowing the state to try to show the jury that the investigation was indeed thorough, or at least sufficiently thorough as to include inquiries of the defendant in order to get leads which might verify, or dispute, defendant's noninvolvement.
For the foregoing reasons, defendant's assignments of error are not meritorious.

Decree
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Apparently other charges were pending in this parish as well as in adjoining Iberia Parish which were unresolved at the time the defendant was convicted on the three forgeries. Defendant then apparently negotiated with prosecutors prior to the imposition of the forgery sentences. In St. Martin Parish, pending charges of burglary, theft and illegal possession of firearms were dropped and the defendant entered guilty pleas to simple robbery and one count of distribution of marijuana. Subsequently in Iberia Parish, the defendant pled guilty to four additional counts of distribution. On each of the foregoing counts, he received sentences of five years which sentences were to run concurrently with his forgery sentences.
[2] Admittedly State v. Brown, 395 So.2d 1301 (La.1981) was decided by a split panel of justices, authored by a justice ad hoc, joined by four members of this Court with C.J. Dixon and J. Lemmon concurring. However the majority's reasons for approving the prosecutor's questions about the defendant's refusal to sign the rights form, are similar to those supporting the Doyle exception and the Fairchild opinion.

The line of questioning, to counter the defense's argument that defendant was nonchalant at his arrest, a factor indicating his innocence, is a reasonable balancing of evidentiary factors. Defense counsel, in his opening statement, had placed before the jury the defendant's nonchalant attitude at the time of his arrest. The jury, having before it this assertion, and being likely to draw inferences therefrom favorable to the defendant, could not have been unduly prejudiced by evidence tending to show defendant had been apprised of constitutional rights which carry with them the gravity of the situation. In fairness, once the inference door had been opened by the defense, the prosecution was entitled to rebut with evidence producing a contrary inference. 392 So.2d at 1313.