BROWN, Chief Judge,
dissents.
1 ,The majority opinion reverses defendant’s convictions because of ineffective assistance of counsel. Although recognizing that defense counsel objected to certain remarks made by the prosecutor in closing argument and that the objection was sustained by the trial court, the majority concludes that defense counsel should have requested a mistrial and not doing so was “substantial” error. In his rebuttal closing argument, the prosecutor started to get into defendant’s post- or possibly pre-ar-rest silence stating “We would be screaming our innocence, it doesn’t belong to me, when given that ...” At this point the objection was made and sustained.[1]
The majority opinion is silent as to the critical facts underlying this issue. Prior to trial, the defense effectively suppressed all evidence related to defendant’s sale of cocaine at his house just four hours before the search. In his opening and closing statements, defense counsel repeatedly asked, “Why (charge) Mr. Washington?” Defense counsel continued to argue that the four teenagers in the house at the time of the search, as well as defendant, denied possession of the drugs but the police let the four boys off and focused only on defendant. Defense counsel continued to argue that the police did not investigate thoroughly.
*434 In United States v. Fairchild,, 505 F.2d 1878 (5th Cir.1975), as part of his defense to charges of receiving and concealing two stolen automobiles in violation of the Dyer Act, 18 U.S.C. § 2313, counsel had alluded to Fairchild’s active cooperation with the police, as the court found, |2“in order to build up his client in the eyes of the jury.” Id. at 1383. In examining the reasons for not permitting prosecutorial comment on a defendant’s post-arrest, post -Miranda silence, the court stated,
Miranda establishes that the prosecution may not use as a part of its case in chief a criminal defendant’s silence following his arrest and warning. This evidence, even though it might be relevant and probative, is normally excluded. But it is important to note that it is excluded for the purpose of protecting certain rights of the defendant. It is not excluded so that the defendant may freely and falsely create the impression that he has cooperated with the police when, in fact, he has not.... Assuming the law would have excluded from evidence Fairchild’s silence had he not broached the subject of cooperation, once he did broach it the bar was lowered and he discarded the shield which the law had created to protect him.... Here the evidence of Fairchild’s Miranda silence was admissible for the purpose of rebutting the impression which he attempted to create: that he cooperated fully with the law enforcement authorities. (Emphasis added) (Citations omitted). Id.
As to post-arrest silence, the Louisiana Supreme Court in State v. Bell, 446 So.2d 1191 (La.1984), found an applicable exception. Bell was accused of forging his grandmother’s name to three checks made out in his favor. Defense counsel’s opening statement disclosed his client’s defense — that the grandmother had authorized defendant’s action and that defendant would take the stand to so testify; that defense counsel could not say why defendant was being prosecuted; that “people make mistakes. They don’t investigate thoroughly. Possibly that’s the situation here.” The supreme court in Bell, 446 So.2d at 1194, stated:
In this case since defense counsel suggested to the jury that the state had failed to investigate the matter, and implied that, had it been investigated properly, the forgery charges would not have been brought against the defendant, the state was allowed to respond by asking the defendant and the investigating officers whether or not they tried to determine the defendant’s involvement by questioning |shim at the time of his arrest. The defendant may not tell the jury that the state’s case is the result of improper investigation without allowing the state to try to show the jury that the investigation was indeed thorough, or at least sufficiently thorough as to include inquiries of the defendant in order to get leads which might verify, or dispute, defendant’s noninvolvement.
Additionally, in State v. Brown, 395 So.2d 1301 (La.1981), the Louisiana Supreme Court refused to reverse a conviction because a prosecutor referred to defendant’s failure to sign the rights form in order to counter suggestions that defendant’s attitude at the time of his arrest was one of nonchalance.
In the present case, the suppression of critical evidence and the opening and closing argument of defendant’s retained attorney are significant.
In July 2007, the Richland Parish Sheriffs Office (“RPSO”) received a tip that defendant, Samuel Washington, was selling cocaine from his home on Edgar Street in Delhi, Louisiana. On July 24, 2007, investigators used a confidential informant who, *435 under surveillance, bought “powder” cocaine from defendant at defendant’s Edgar Street residence. This sale occurred at 2:46 p.m. Immediately following the sale, the agents obtained a search warrant for defendant’s house. They returned to defendant’s home at 7:24 p.m. and executed the search warrant. The drugs seized during that search resulted in the present charges. The witnesses for both the state and defendant testified that defendant was at his Edgar Street residence that afternoon and, particularly, at the time of the sale to the informant. Just before the arrival of the search team, defendant had left the house to run some errands. At the time of the search, four teenagers, Devon Williams, |4Samuel Boston, Jr., Lee Arthur Jones, and Devaun Jones, were present in the home.[2] Powder cocaine and marijuana were found on top of the TV in the living room. The teenagers were playing video games in the living room. In a back bedroom rocks of cocaine and more marijuana were found. In the kitchen were digital scales, baggies, rolling paper, and cigars. Utility bills in defendant’s name and testimony clearly showed that defendant resided at this address.
Defendant was initially appointed an attorney, but later retained counsel. Defendant’s attorney engaged in substantial pretrial motion practice. The most damning evidence against defendant on the charges of possession with intent was the actual sale of the cocaine the same afternoon as the search. In effect, defense counsel was successful in suppressing this evidence. The court denied defendant’s motion to produce the identity of the informant, but ordered that the state would not be allowed to make any reference at trial to the purchase by the informant.
In his opening statement to the jury, defense counsel stated that the police failed to thoroughly investigate the case, and that the police and prosecutor accepted the denials of the four teenagers who were in the house, while rejecting defendant’s denials. Defense counsel repeatedly asked, “Why Mr. Washington?” Of course, the primary answer could not be revealed, that is, that Mr. Washington sold cocaine to a confidential informant under police surveillance just four hours prior to the search.
|sBoth parties questioned Deputy Brandon Fleming extensively about his investigation. It was during cross-examination by defense counsel that Deputy Fleming revealed that defendant had not said anything. Defense counsel particularly emphasized that defendant was not present at the house when it was searched, that the powder cocaine was discovered in plain view of the four teenagers, and that the officers focused on defendant even though all, including defendant, denied possession of the drugs. This is also what defense counsel said in his opening and closing statements.
The majority opinion states that, “Counsel’s decision to ask the investigator if the defendant had made any statements to him is arguably a strategic move on his part, and not an act of ineffective assistance. Since the defense counsel opened the door to that line of questioning, the prosecutor’s questions were proper.” I agree with this statement.
At the close of the evidence, the prosecutor made a closing argument, as did defense counsel. In his closing argument, defense counsel repeatedly commented on the prejudicial police investigation. Some of his remarks were: “They (the deputies) were told whose marijuana it was. But *436 that’s not acceptable, they want who they want and that’s Mr. Washington;” “Why did they dismiss these charges (against the four teenagers)? Don’t ask me, I don’t know. But one thing I do know is that this law should not be about who you know (Lee and Devaun Jones’ uncle was a detective with the RPSO); and, repeatedly, “I wonder why Mr. Washington was charged?”
On rebuttal argument, the prosecutor stated:
When given that opportunity there was deafening silence. That tells more about this than anything. He marches all these | ^friends and family in here to say this and that but not one single one of them said that cocaine belonged to anybody else but this defendant. We would all be screaming our innocence, “It doesn’t belong to me” when given that ...
At this point defense counsel objected and the court sustained the objection. Defense counsel did not request a mistrial. Without exploring all possible reasons for counsel’s strategy in not asking for or even wanting a mistrial, the majority concludes that a mistrial should have been asked for and that, if it had been, the trial court would have granted it. With this I disagree.
Defense counsel presented a defense. Devaun Jones, one of the four young men at defendant’s house when the warrant was executed, testified for the state that he and defendant had cleaned the home’s carpet earlier that day. Although Jones admitted that he had previously smoked marijuana, he denied possession of any drugs or having any knowledge of the drugs in defendant’s home on the day in question. Jones also said that he had never been to the back bedroom. Jones further testified that he did not see any of the three other boys in possession of any drugs in defendant’s home. He admitted, however, to “underage” drinking by the teenagers. Defendant was 30 years old.
Defense witness, Samuel Boston, Jr., who is defendant’s cousin, testified that while he was at the house that day, he had seen marijuana sitting on the couch between Devaun Jones and Lee Arthur Jones. On cross-examination, Boston admitted that he had previously told the prosecutor that he had not seen any marijuana in the house prior to the raid.
17Photographs show that the bulk of the cocaine, which was approximately six grams, was in a clear plastic bag on top of the television that was being used by the four young men who were playing a video game. A brown paper sack containing marijuana was also found on top of the television. Tamarcus Jones testified that Devaun Jones smoked marijuana, and that he saw Devaun with “something in a brown paper bag” in his pocket that day. Tamarcus related that Devaun did not want anybody to see the contents of this brown paper bag. Samuel Boston, Jr., testified that he too was aware that De-vaun smoked marijuana. Boston stated that he saw marijuana on the couch between Devaun Jones and Lee Jones that day. Each of these young men had a strong motive to lie and deny knowledge of the drugs, which were not hidden in any way.
Defense counsel had presented a strong case for acquittal. A second trial obviously would not have been better than what he already had. Even if the remarks by the prosecutor were error, it was harmless as he simply repeated testimony that the majority found to be admissible. I do agree that the prosecutor was starting to become repetitive and that the trial court properly put a stop to it.
*437 For the foregoing reasons, I respectfully dissent.

. Defendant learned of the search at his house and voluntarily went to the Sheriff's office. There was no testimony presented concerning his arrest and the reading of his Miranda rights.

. Devaun Jones testified that he was 18 years old and that the others were high school classmates. The other boys were not asked their age.