# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #014

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **22nd day of March, 2024** are as follows:

**PER CURIAM:**

2023-K-00008    STATE OF LOUISIANA    VS.    SHARRIEFF M. KENT (Parish of Plaquemines)

REVERSED AND REINSTATED. SEE PER CURIAM.

Hughes, J., dissents and assigns reasons.

Crichton, J., additionally concurs and assigns reasons.

Genovese, J., dissents for the reasons assigned by Justice Hughes and the court of appeal.

Crain, J., concurs and assigns reasons.

McCallum, J., concurs for the reasons assigned by Justice Crain.

Griffin, J., dissents for the reasons assigned by the court of appeal.

SUPREME COURT OF LOUISIANA

No. 2023-K-00008

STATE OF LOUISIANA

VS.

SHARRIEFF M. KENT

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Plaquemines

**PER CURIAM:**

We granted the State's application to consider whether the court of appeal erred in reversing defendant's convictions based on violations of defendant's right to due process and his Fifth Amendment right to remain silent. After a careful review of the record, we find that the court of appeal erred in determining that the State violated defendant's right to due process when it introduced evidence of other crimes, in contravention of La. C.E. art. 404(B), and in determining that the State violated defendant's Fifth Amendment right to remain silent. While we agree with the court of appeal's determination that the State improperly impeached defendant with the facts surrounding a prior conviction, we find that the verdict rendered was surely unattributable to the error considering the overwhelming testimonial and physical evidence showing defendant fired his weapon at a fleeing vehicle in the street. For the reasons below, we reverse the decision of the court of appeal, and we reinstate the convictions, which are hereby affirmed.

*Background*

A Plaquemines Parish jury found defendant guilty of two counts of aggravated assault with a firearm, La.R.S. 14:37.4; one count of aggravated criminal damage to property, La.R.S. 14:55; and one count of illegal discharge of a firearm, La.R.S. 14:94(A). The State proved at trial that defendant fired several shots at a pickup

truck containing law enforcement officers as they fled. The officers were conducting a "trash pull" as part of a narcotics investigation on the night of June 23, 2019, at defendant's home.

At trial, a detective testified that she was assigned to the narcotics division. She described "trash pulls" generally, in which police search through someone's trashcan, explained how they are conducted, and she indicated that it was a common practice in narcotics investigations. She also indicated that defendant would have been tipped off that he was the target of an investigation when he caught them going through his trash. The defense twice moved for a mistrial during her testimony, which motions were denied.

Defendant testified that he fired his weapon to protect his family from the threat posed by unknown intruders on his property. He denied that he told police he fired to protect his property because someone was stealing his garbage. The State countered this testimony with that of an officer who stated that defendant never told police he was afraid or that he was protecting his family, and he only indicated that he was defending his garbage. After the defense cross-examined the officer on the fact that none of defendant's statements were recorded or written down, and that the officer did not ask defendant why he fired his weapon, the officer testified on redirect that defendant was given the opportunity to make a statement but that he exercised his right not to. This officer's testimony was confirmed by others.

Defendant also testified that he very reluctantly used his gun to protect his family, and that this shooting caused him anxiety. He stated that he had only previously taken his weapon to a firing range and fired it there. On cross, he was asked about a prior incident in which he was convicted for interfering with a police investigation because he had brandished his weapon at a sheriff's deputy who had knocked on his door.

2

The court of appeal found that the State violated defendant's right to due process when it improperly introduced evidence of other crimes and of a prior conviction, in contravention of La. C.E. art. 404(B), and violated defendant's Fifth Amendment right to remain silent by referencing defendant's post-arrest, post-*Miranda* silence. Accordingly, the court of appeal reversed defendant's convictions. *State v. Kent*, 2022-0423 (La. App. 4 Cir. 12/6/22), 353 So.3d 362.

The court of appeal found that the references to an ongoing narcotics investigation in which defendant was the subject were excessive and unfairly prejudiced defendant by presenting him to the jury as drug offender. The court of appeal stated, "In the matter *sub judice*, when we balance the admissibility of evidence under the *res gestae doctrine* against the purpose behind excluding bad acts and other crimes evidence, [the detective's] testimony went beyond the need to explain the officers' presence on the scene to conduct the trash pull investigation; and instead, prejudiced Defendant with his depiction as a drug offender." *Kent*, 2022-0423, p. 16, 353 So.3d at 362.

The court of appeal also found that the State improperly impeached defendant's testimony with his prior conviction for interfering with a police officer. The court of appeal found that the detailed testimony about this incident was not a fair response to defendant's testimony that he took his gun to a firing range, that it did not comport with La.C.E. art. 609.1(C) (which allows the underlying details of the offense to be admitted only under certain conditions that were not met here),[1]

---

[1] Code of Evidence art. 609(C), pertaining to attacking credibility by evidence of conviction of crime in criminal cases, provides:

> C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
>
> (1) When the witness has denied the conviction or denied recollection thereof;
>
> (2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or

3

and the prior incident was sufficiently unlike the charged one that its probative value was outweighed by the danger of unfair prejudice.

Additionally, the court of appeal found that the reference to defendant's invocation of his right to remain silent after he was arrested and *Mirandized* violated the Fifth Amendment, citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The court of appeal stated:

> Our review of the trial record herein reveals that the State's examination of its witnesses not only concerned Defendant's opportunity to provide a statement, but also focused on Defendant's willingness to give a recorded or written statement. In particular, the State's questioning of [the chief deputy and a detective] about Defendant's unwillingness to provide a statement improperly referenced Defendant's Fifth Amendment right to remain silent. [The chief deputy] directly verified that Defendant invoked his right to remain silent in response to the State's questioning. As such, the State's questions fall within the purview of *Doyle*. The questions should not have been asked as they violated Defendant's Fifth Amendment right against self-incrimination and to remain silent.

*Kent*, 2022-0423, pp. 27–28, 353 So.3d at 379.

Finally, the court of appeal found that these errors were not harmless, and therefore the convictions must be reversed. The court of appeal, in essence, found that the errors had a potentially significant cumulative effect. The court of appeal stated:

> The State's introduction of bad acts and other crimes evidence ordinarily excluded by La. C.E. art. 404 painted Defendant as a "bad guy." The State's excessive emphasis on Defendant as the subject of a criminal narcotics investigation defined him as a possible drug user or dealer. The State's introduction of Defendant's prior misdemeanor conviction for Interfering with a Police Investigation allowed the State to characterize Defendant as someone who was hostile to law enforcement and had a history of using his weapon against law enforcement without cause. Defendant's alleged bad guy persona and general uncooperative interaction with law enforcement was further underscored by the State's improper reference that Defendant had refused to provide a statement to the officers on the scene and had invoked his Fifth Amendment right to remain silent.

---

(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.

> The State reliance on these errors in its closing argument underscores that these errors may have misled or confused the jury. The State magnified its personification of Defendant as a bad guy in stressing the dangers faced by the "good guy" police officers in performing their jobs, arguing "[b]ut what they [police officers] do expect is when they put their life [sic] on the line and someone tries to take that life, that the citizens of this parish hold that individual accountable." In comparison, the State specifically argued that the "bad guy" Defendant drew his gun on another officer in 2017 and proclaimed that Defendant "tried to kill those officers" in reference to the present charges. These arguments were made notwithstanding that the State offered no evidence that Defendant knowingly fired at police officers in the present offense or to corroborate that Defendant's prior conviction resulted from having drawn his weapon on an officer. Moreover, the State's closing argument highlighted that Defendant had invoked his Fifth Amendment right to remain silent by emphasizing that Defendant was given an opportunity to give a recorded statement and refused to do so.

*Kent*, 2022-0423, pp. 28–29, 353 So.3d at 379–80. The court of appeal concluded that it could not say that the verdict was surely unattributable to these errors because a reasonable possibility exists that the erroneously admitted evidence contributed to the guilty verdict. *Kent*, 2022-0423, p. 30, 353 So.3d at 380.

Thus, the question presented is whether the court of appeal erred in finding that three evidentiary errors occurred, and further erred in finding that any errors were not harmless and therefore required reversal. After carefully reviewing the record, we find that witness comments explaining the "trash pull" as part of a narcotics investigation were not impermissible references to other crimes. We also find that no comment on defendant's post-arrest silence in violation of *Doyle* occurred here. However, we agree with the court of appeal's determination that the State failed to satisfy the requirements of La.C.E. art. 609.1(C) to admit the facts of the prior conviction for interfering with a police officer. But we find that error is not reversible in this case. We find that the court of appeal erred in its evaluation of harmless error under the standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

*Other bad acts evidence/Article 404B and integral acts*

Generally, evidence of other misconduct is inadmissible because it creates a risk that the defendant will be convicted of the present offense simply because he is a "bad person." Evidence of other crimes may be admissible, however, if the state establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La.C.E. art. 404(B)(1). Under La.C.E. art. 403, the probative value of the extraneous crimes evidence must outweigh the danger of unfair prejudice.

Here, during a detective's testimony, there were approximately nine references to either her work in the narcotics division or the investigation with respect to defendant, and defense counsel objected twice. As the State correctly points out in its brief, however, this court has found that non-specific references to an investigation and/or surveillance without more explicit references to an alleged crime or bad act do not result in substantial prejudice to the defendant nor do they deprive him of a fair trial. Although we most recently addressed the issue in *State v. Groves*, 23-0046, p. 1 (La. 1/13/23), 352 So.3d 962 ("the FBI agent's non-specific references to surveillance and an investigation were not so prejudicial as to effectively deny defendants a fair trial"), the court has long held that such references must be specific and unambiguous references to other crimes in order run afoul of La.C.E. art. 404. The court has explained:

> Moreover, a comment must not "arguably" point to a prior crime; to trigger mandatory mistrial pursuant to Article 770(2), the remark must "unmistakably" point to evidence of another crime. *State v. Babin*, 336 So.2d 780 (La.1976) (where reference to a "mug shot" was not unmistakable reference to a crime committed by defendant); *State v. Harris*, 258 La. 720, 247 So.2d 847 (1971) (where no crime was evidenced by a police officer's reference to obtaining defendant's photograph from the Bureau of Investigation). In addition, the imputation must "unambiguously" point to defendant. *State v. Edwards*, 406 So.2d 1331, 1349 (La.1981), *cert. denied sub nom. Edwards v. La.*, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982).

6

*State v. Edwards*, 97-1797, p. 20 (La. 7/2/99). 750 So.2d 893, 906.

Here, the trial court allowed the State to present evidence describing a "trash pull" and why such a practice exists as a law enforcement technique as necessary context to explain why officers were approaching defendant's trashcan in the first place. Such a ruling comports with La.C.E. art. 404 and this evidence is permissible "integral act" or res gestae evidence. Though the detective did testify several times that she was a member of the narcotics squad on the night in question and made a remark indicating defendant was under surveillance at the time, at no point did the detective (or any other witness) allege that defendant had committed a specific other crime or bad act. Moreover, as the State argues, any juror would likely reasonably assume that the police do not conduct trash pulls of citizens who are not under some sort of surveillance or suspicion. Thus, in accordance with this court's longstanding jurisprudence, the ambiguous references made here to the officers conducting the trash pull as part of a narcotics investigation do not constitute impermissible references to other crimes or misconduct. The court of appeal erred in finding otherwise.

*Post-arrest silence/*Doyle v. Ohio

Defendant and the State disputed what defendant said, if anything, after he was arrested. According to the State, immediately after being placed under arrest and *Mirandized*, defendant gave a statement to police describing his reasoning for shooting at the officers. He stated, "I shot at the black F-150. I have a right to protect my property. They were stealing my garbage." It was defendant's contention at trial, however, that he never made a statement at all to police. Law enforcement, according to defendant, fabricated the entire thing, and defense counsel highlighted this theory in his opening statement: "Now, this whole idea that Mr. Kent says, 'I was protecting my trash' when he says that, is absolutely untrue. Mr. Kent never says that because

it's not true." This context is significant for evaluating the court of appeal's determination that the State repeatedly, and impermissibly, referred to defendant's post-arrest silence.

Thus, it was disputed whether defendant was, in fact, silent post-arrest. According to police, he gave a statement that included a reason for his actions. This statement was first elicited through the testimony of the chief deputy, and the prosecutor followed up by asking if defendant ever stated that he was in fear for his life or that he was protecting his family, to which the witness answered in the negative. On cross-examination, defense counsel posed the following question to this witness: "Now, in an effort to do a complete investigation, were any of these statements recorded in any fashion, like audio or video recording?" Defense counsel later followed up: "So there's no interview that [defendant] is given the opportunity to describe what happened and why it happened, at least that you saw, in relation to [defendant]; yes or no?" A subsequent witness then testified that defendant was not willing to give him a recorded statement.

The court of appeal is correct that the United States Supreme Court in *Doyle* clearly stated that a defendant's post-arrest silence cannot be used to impeach an exculpatory version of events later given at trial. But as described above, it is disputed whether defendant was silent post-arrest. As such, this Court's ruling in *State v. Bell*, 446 So.2d 1191 (La. 1984), in which this court found an exception to *Doyle* where the defense strategy was to suggest an incompetent or incomplete investigation, is pertinent:

> In this case since defense counsel suggested to the jury that the state had failed to investigate the matter, and implied that, had it been investigated properly, the forgery charges would not have been brought against the defendant, the state was allowed to respond by asking the defendant and the investigating officers whether or not they tried to determine the defendant's involvement by questioning him at the time of his arrest. *The defendant may not tell the jury that the state's case is the result of improper investigation without allowing the state to try to show the jury that the investigation was indeed thorough*, or at least

8

sufficiently thorough as to include inquiries of the defendant in order to get leads which might verify, or dispute, defendant's noninvolvement.

*Id*. at 1194 (emphasis added).

Here, whether defendant gave a statement at all was disputed at trial. The defense theory from the very outset was to persuade the jury that defendant gave no statement and that police, in hindsight, fabricated defendant's reasoning for shooting his weapon. Defense counsel repeatedly emphasized the fact that police were not able to memorialize any statement to support this theory. Defense counsel, at one point, specifically referenced the completeness of the state's investigation when asking the chief deputy whether anyone attempted to record defendant's statement about protecting his trash (emphasis added): "Now, *in an effort to do a complete investigation*, were any of these statements recorded in any fashion, like audio or video recording?" Defendant also argues this in his brief. *See opposition brief* at 15 (stating that defense counsel "only wished to *cast aspersions on law enforcement* by confirming that none of [defendant's] alleged remarks were reduced to writing or recorded in any fashion.") (emphasis added).

In this context, in which the defense strategy was to persuade the jury that defendant gave no statement and that police, in hindsight, fabricated defendant's reasoning for shooting his weapon, the case is more like *Bell* than *Doyle* (in *Doyle* the defendant was silent post-arrest and then offered an exculpatory version of events at trial). Further, the United States Supreme Court has explained after *Doyle*:

> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). While *Anderson* specifically discussed a situation different from that at hand

(wherein the questioning at issue was the cross-examination of defendant himself), the point remains that *Doyle* protects a defendant's post-arrest *silence*. Here, law enforcement witnesses testified that defendant gave a statement to police about why he fired the shots. Defense counsel attempted to undercut the state's credibility with respect to that statement by pointing out that it was not memorialized in any way, and here, it seems the reasonable application of *Bell* as well as *Anderson* suggests that the state was permitted to explain that defendant was given the opportunity to give a memorialized statement and chose not to do so.[2]

Thus, the circumstances presented here align more with the jurisprudence discussing the exceptions and non-application of *Doyle* than with *Doyle* itself. Accordingly, we find that the court of appeal erred in determining that the State violated *Doyle* by referencing defendant's statement to police concerning his reason for firing his weapon and commenting on the lack of any additional reasons given by defendant.

*Facts underlying prior conviction/Articles 607(C) and 609.1(C)(3)*

We agree with the court of appeal that the State introduced the facts underlying defendant's prior conviction for interfering with a police officer without first satisfying necessary prerequisites to their admission. On direct examination, defendant testified that he only uses his gun at the firing range and that the incident

---

[2] Support for this conclusion is found in the United States Fifth Circuit as well, although the jurisprudence there is somewhat inconsistent on this issue. *See United States v. Fambro*, 526 F.3d 836, 843–47 (5th Cir. 2008) (collecting cases and explaining inconsistencies). In *Fambro*, the court ultimately concluded that it was bound by the Fifth Circuit's en banc decision in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978). In *Beechum*, a substitute mail carrier was suspected of stealing from the mail. A sting operation was commenced using a marked silver dollar. The silver dollar was found in the mail carrier's pocket, along with two unsigned credit cards issued to persons other than the mail carrier. After being arrested and read his *Miranda* rights, Beechum gave an explanation for the two credit cards but not the silver dollar. He was convicted of unlawfully possessing the silver dollar. At trial, the government elicited from the arresting officer testimony indicating that Beechum gave no explanation for his possession of the silver dollar, and that this lack of explanation was highlighted in the prosecutor's closing arguments. The Fifth Circuit held that it was significant that Beechum "chose to speak" and reasoned that the prosecutor's statement was "an appraisal of what Beechum said" rather than a comment on Beechum's silence. *Id.* at 906.

in question was the first time he has ever had to use his gun outside of the firing range. On cross-examination, the State questioned defendant again regarding his gun use, and defendant confirmed his answer on direct, that he doesn't "bring his guns out" unless he is at the firing range. The State subsequently sought to impeach defendant's testimony on this point by introducing the facts of his prior conviction, which apparently include the fact that defendant came to his back door holding his firearm when officers entered his backyard at 1:00 a.m. to investigate a claim of animal cruelty. The colloquy relied on by the state is as follows:

> State:      All right. You said you never bring your guns out unless you go to the gun range, right?
>
> Defendant:  That's also correct.

Had the state stopped questioning defendant here, the State might have been able to impeach defendant using the facts of his prior conviction involving him bringing a gun to a situation not involving the gun range, in accordance with La.C.E. art. 607(C).[3] The State, however, immediately asked a follow-up question that allowed defendant to clarify and expand on his answer:

> State:      Okay. So the only time—You have your guns in your house, and the only times you've ever brought them out is when you go to the gun range, practice shooting?
>
> Defendant:  If I'm going out late hours I have my handgun on me, yes.

The State then began a lengthy line of questioning concerning the details of the prior conviction.

The record shows that defendant did not, as the State argued, testify that he

---

[3] Code of evidence art. 607(C), pertaining to attacking and supporting credibility generally, provides:

> Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.

*only* brings his guns out at the gun range. The State allowed defendant to clarify that answer, and he explained that he brings his guns out at the gun range *and* if he is going out late at night. Thus, the fact that defendant brandished a firearm in an earlier incident that occurred late at night does not contradict defendant's testimony that he also brings his guns out if he "goes out" late at night. The court of appeal was therefore correct to find that the state was not permitted to impeach defendant using his prior conviction under La.C.E. art. 607.

Code of Evidence art. 609.1(C)(3) also permits introduction of the details of a prior conviction "[w]hen the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury." There has been some confusion in the jurisprudence concerning what the details need to be probative of for subsection (C)(3) to apply, with some courts suggesting it need be probative of guilt for the charged offense, but this court has made it clear that the facts of the prior conviction must be probative "with respect to the defendant's credibility."[4] *State v. Leonard*, 05-1382, p. 10 (La. 6/16/06), 932 So.2d 660, 667. And, as noted above, because it does not appear that the facts of the prior conviction contradict defendant's testimony that he sometimes brought his guns out when he was out late at night, this evidence was not probative with respect to defendant's credibility.

*Harmless error*

Finally, the court of appeal erred in its analysis of harmless error. Under La.C.Cr.P. art. 921, a judgment or ruling "shall not be reversed . . . because of any error . . . which does not affect substantial rights of the accused." In *State v. Gibson*, 391 So.2d 421 (La. 1980), this court adopted the test for "harmless error," as stated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under that test, the question is whether it appears "beyond a reasonable doubt that the error

---

[4] If the details of a prior conviction were probative of the defendant's guilt on the charged offense, such evidence would be tested and admitted through La.C.E. art. 404(B).

complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828; *see also State v. Gibson*, 391 So.2d 421, 426–27 (La. 1980). The United States Supreme Court has clarified that the critical inquiry is whether the verdict rendered was surely unattributable to the error. *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

The jury here was asked to determine, in essence, whether defendant was justified in firing his weapon. Defendant claimed that he fired at an unknown intruder on his property who posed a threat and denied that he fired at vehicle, which posed no threat because its occupants were fleeing. The testimony of law enforcement officers disputed this. The jury had the physical evidence to assist them in choosing between these two versions of the incident, and the forensic evidence (consisting of bullet casing recovered near the street and not near where defendant claimed he fired from, and trajectories of bullets that struck the street and suggested defendant fired down that street) confirmed the State's version of the incident and strongly suggested defendant's action was not justified.

The circumstances are like those presented in *State v. Powell*, 28,788, pp. 12–13 (La. App. 2 Cir. 11/1/96), 683 So.2d 1281, 1288–89, *writ denied,* 97-0092 (La. 5/30/97), 694 So.2d 243. There, defendant admitted he shot the victim after a confrontation, but claimed he did so in self-defense after the victim grabbed for his waistband. Evidence of a prior conviction was improperly admitted at trial. The court of appeal in *Powell* noted that this court in *State v. Johnson*, 1994-1379 (La. 11/27/95), 664 So.2d 94, had found that because there were two eyewitnesses who testified to the stabbing at issue and who personally knew the defendant such that there was an unlikelihood of misidentification, as well as other evidence identifying the defendant, the verdict actually rendered was surely unattributable to the error, and therefore the error was harmless. Similarly, the court of appeal in *Powell* found that:

> [A]lthough there may have been some prejudice to the defendant by the evidence of the details of the prior conviction, we hasten to add in this instance that the defendant admitted to the shooting of the victim. There was no issue of identification of the defendant as the killer. The issue in this instance was the defendant's description of the actions of the victim that allegedly led to the shooting and his claim that he acted in self-defense. The state presented testimony of several eyewitnesses to the shooting. These witnesses all said that the victim did not have a visible weapon and did not move his hands as if reaching for a weapon as the defendant claimed. By contrast, except for the defendant himself, the defense put on no eyewitnesses to the shooting whose testimony supported the "reaching for a weapon" account by the defendant. The details of the *defendant's actions* in the prior aggravated battery do not bear upon or relate to the *victim's actions* in this case where the crux of the issue is self-defense.
>
> We conclude that the state's evidence is surely enough to refute the defendant's claim of self-defense, and therefore, the guilty verdict was unattributable to the error. We are convinced beyond a reasonable doubt that the admission of the details of the prior conviction was harmless error.

*Id*. (emphasis in original).

A similar analysis holds here. Defendant's prior conviction bears little relation to the victims' actions prior to defendant firing at them (and whether they were already fleeing at the time defendant fired his weapon). The State's case was primarily established by the State's own witnesses and the forensic evidence corroborated their version of events. Under these circumstances the verdict is surely unattributable to the erroneous admission of the details of the prior act. As such, this error, when viewed according to the test for harmless error, does not warrant a reversal of defendant's conviction.

*Conclusion*

For the reasons above, we find that the court of appeal erred in determining that the State violated defendant's right to due process when it introduced evidence of other crimes, in contravention of La. C.E. art. 404(B), and in determining that the State violated defendant's Fifth Amendment right to remain silent. While we agree with the court of appeal's determination that the State improperly impeached defendant with the facts surrounding a prior conviction, we find that the verdict

rendered was surely unattributable to the error considering the overwhelming testimonial and physical evidence showing defendant fired his weapon at a fleeing vehicle in the street. We reverse the ruling of the court of appeal. We reinstate defendant's convictions and sentences, which are hereby affirmed.

**REVERSED AND REINSTATED**

**SUPREME COURT OF LOUISIANA**

**No. 2023-K-00008**

**STATE OF LOUISIANA**

**VS.**

**SHARRIEFF M. KENT**

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Plaquemines

**Hughes, J., dissenting.**

The defendant was repeatedly called a drug dealer in front of the jury even after the trial judge warned the prosecutor, and the misuse of the defendant's prior conviction, which was unjust to start with, was so blatantly contrary to the rules as to be almost comical, and allowed the prosecutor to present the defendant as a habitual aggressor against the police. There is no way this defendant was not prejudiced in front of the jury.

The defendant has twice now had police show up at his house in the dark late at night with his wife and kids present. He is <u>not</u> a convicted felon. He has the right to possess a gun *whenever and wherever he wants*. In the first instance, when the police identified themselves, he cooperated. The second time, they fled!

As pointed out by the Court of Appeal, the prosecutor's specific conduct suggesting that defendant was a drug dealer in the habit of drawing down on cops and that he "tried to kill these officers" was surely not harmless. I would therefore affirm the Court of Appeal.

# SUPREME COURT OF LOUISIANA

## No. 2023-K-00008

## STATE OF LOUISIANA

## VS.

## SHARRIEFF M. KENT

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit,*
*Parish of Plaquemines*

**Crichton, J., additionally concurs and assigns reasons.**

While I agree with the outcome reached by the Court in this case, I write separately to address my grave concerns about the conduct of the assistant district attorney (ADA) while cross-examining defendant during trial. As explained in the majority opinion, the ADA introduced the facts underlying defendant's prior conviction without first satisfying the necessary prerequisites for admission. In response to this ADA's questioning, defendant testified that he only "brought out his guns" when he was at the gun range and when he went out at late hours. The facts of defendant's prior conviction were *consistent* with, not contrary to, defendant's testimony. Accordingly, the ADA was not permitted to present the facts of that conviction in an effort to impeach defendant. *See* La.C.E. art. 607(c).

The ADA chose to flirt with reversible error by ignoring defendant's testimony and breaching the rules of evidence as he pursued a lengthy line of illegitimate questioning. In doing so, he exposed the jury to irrelevant evidence and jeopardized an otherwise sound conviction. As explained in the majority opinion, it is only the strength of the case against defendant that has spared this ADA from suffering a reversal of a conviction he prosecuted. *See* La.C.Cr.P. art. 921 (A judgment or ruling "shall not be reversed . . . because of any error . . . which does not affect substantial rights of the accused.").

As I have emphasized before, district attorneys have an awesome amount of power in our justice system and with that power comes responsibility. *See e.g. State v. Johnson*, 2020-00743, p. 10 (La. 9/30/21), 330 So.3d 295, 303 (Crichton, J., concurring); *State v. Edmond*, 2021-0630, p. 1 (La. 5/8/21), 315 So.3d 854 (Crichton, J., concurring); *State ex rel. Morgan v. State*, 2015-0100, p. 17 (La. 10/19/16), 217 So.3d 266, 277–78 (Crichton, J., concurring). As such, a prosecutor's role is as "a minister of justice and not simply that of an advocate." Model Rules of Prof'l Conduct R. 3.8 cmt[1] (Am. Bar. Ass'n 1983). Indeed, "[t]he primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict." *Standards for Criminal Justice: Prosecution and Defense Functions* § 3-1.2(b) (Am. Bar. Ass'n, 4th ed. 2017). The National District Attorneys Association's Prosecution Standards provide specifically that a prosecutor's "[e]xamination of a witness's credibility should be limited to legally permitted impeachment techniques." Nat'l Prosecution Standards, §2, 1-2.1(f) (Nat'l Dist. Atty's Ass'n, 4th ed. 2023); *see also, Id.,* §2, 1-2.1(g)("A prosecutor should avoid obstructive and improper tactics. Examples of such tactics include, but are not limited to, knowingly: . . (c) Attempting to ask clearly improper questions or to introduce clearly inadmissible evidence.").

The ADA's cavalier actions during defendant's trial also border on violating the Louisiana Rules of Professional Conduct which provide that "lawyers shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence. . ." La. Rules of Prof. Conduct R. 3.4 (e). The Rules also require that "[a] lawyer [] not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous. . ." La. Rules of Prof. Conduct R. 3.1.

Finally, I note that this is not the first time I have been compelled to comment on this particular ADA's troubling actions in and outside the courtroom. *See In re*

*Napoli,* 2017-0503 (La. 5/19/17), 219 So.3d 1063 (Crichton, J., concurring). Once again, valuable judicial resources were consumed to determine the appropriate consequences of this ADA's reckless and unnecessary conduct.

**SUPREME COURT OF LOUISIANA**

**No. 2023-K-00008**

**STATE OF LOUISIANA**

**VS.**

**SHARRIEFF M. KENT**

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Plaquemines

**CRAIN, J., concurs and assigns reasons.**

While I agree with the ultimate conclusion reached by the majority, I write to address the admission of defendant's prior conviction of Interfering with a Police Investigation. Defendant testified he never brings his guns out unless he goes to the gun range. In expanding on this testimony, he stated, "If I'm going out late hours I have my handgun on me, yes." The State then elicited testimony regarding defendant's prior conviction that involved defendant brandishing a gun when an officer came to his house after midnight to investigate a complaint. The majority finds this line of questioning that allowed the jury to hear of defendant's prior conviction was beyond the scope of impeachment. I disagree.

Defendant's testimony that he only "brought out his guns" when he was at the gun range or "going out" at night contradicts his prior conviction involving him brandishing a gun *at his home*. "Going out" denotes leaving one's property; it does not suggest confronting an officer in his own backyard. Thus, the State correctly used the prior incident to contradict defendant's testimony and probatively attack his credibility. I find no error in the admission of the prior conviction.

Even without the prior conviction, I agree with the majority that the strength of the State's case is not undermined. The jury heard evidence that a deputy's vehicle was fired upon; there was damage to the rear tire of the vehicle; there were

shell casings only on the public servitude–not on defendant's property; there was a handgun in defendant's closet matching the shell casings recovered at the scene; and defendant admitted firing the gun at the officers despite the officer fleeing from him. A reasonable juror could conclude defendant was not acting in self defense as this evidence establishes defendant's action was not justified.

# SUPREME COURT OF LOUISIANA

## No. 2023-K-00008

## STATE OF LOUISIANA

## VS.

## SHARRIEFF M. KENT

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit,*
*Parish of Plaquemines*

**GRIFFIN, J., dissents for the reasons assigned by the court of appeal.**